UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE

**FILED**

VANESSA L. ARMSTRONG, CLERK

AUG 1 5 2011

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

IN THE MATTER OF )
)
THE EXTRADITION OF ) Misc. No.  3:11mj-234
)
PAUL DOUGLAS PETERS )

COMPLAINT FOR PROVISIONAL ARREST
WITH A VIEW TOWARDS EXTRADITION
(18 U.S.C. §3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on

information and belief that the following is true and correct:

1.  I represent the United States in fulfilling its treaty obligation to Australia;

2.  there is an extradition treaty in force between the United States and Australia entitled

Treaty on Extradition Between the United States of America and Australia, U.S.-Austl., May 14,

1974, 27 U.S.T. 957, as supplemented and amended by the Protocol Amending the 1974

Extradition Treaty with Australia, U.S.-Austl., Sept. 4, 1990, S. TREATY DOC. NO. 102-23

(1992);

3.  the treaty provides in article 12 for the provisional arrest and detention of alleged fugitives

pending the submission of a formal request for extradition and supporting documents;

4.  in accordance with article 12 of the treaty, the Government of Australia has asked the

United States for the provisional arrest of Paul Douglas Peters with a view towards his

extradition;

5.  according to the information provided by the requesting state, Paul Douglas Peters was

charged with:  Aggravated break and enter with intent to commit a serious indictable offense,

contrary to section 112(3) of the Crimes Act 1900 (New South Wales (NSW)); Demand property

by force with intent to steal, contrary to section 99(1) of the Crimes Act 1900 (NSW); and

Kidnapping, contrary to section 86(1) of the Crimes Act 1900 (NSW), committed within the

jurisdiction of Australia, and a warrant for his arrest was issued on August 12, 2011, by Brian

Coady, Authorized Officer of the New South Wales Local Court, Parramatta, at New South

Wales, with respect to the offense of demand property by force with intent to steal, and on August

13, 2011, by Christine McKenzie, an Authorized Officer of the New South Wales Local Court,

Ballina, at New South Wales, with respect to the offenses of kidnapping and aggravated break

and enter with intent to commit a serious indictable offense;

6.      the warrant was issued on the basis of the following facts:

On August 3, 2011, M.P., an 18-year-old school student, was studying for her High

School certificate trial examinations in her bedroom of her family home in Mosman, New South

Wales ("NSW"). At about 2:15 p.m., she saw a man carrying a black aluminum baseball bat and

wearing a striped, multi-colored balaclava over his head, walk into her room. The man told her

that he was not going to hurt her. Alarmed, M.P. stood up, retreated, and asked the man what he

wanted.

The man told M.P. "...sit down and no one needs to get hurt". M.P. sat on her bed, and

the man put the baseball bat and a greyish blue-colored backpack on the bed next to her. M.P.

noticed that the man was holding a black box. He forced the box against her throat and looped a

device similar to a bike chain, which was also attached to the box, around her neck. While the

man was doing this, M.P. asked him what he was doing, and he told her that he would tell her in a

minute. The man then locked the box into position around M.P.'s neck. He placed a lanyard, on

the end of which was attached a green Imation 4 gigabyte USB stick and a plastic document

sleeve, around her neck. The man started to walk away, and as he did so, M.P. asked him where

2

he was going. The man responded by saying, "Count to two hundred ... I'll be back ...if you move I can see you I'll be right here." At the same time, the man indicated the hallway leading to her bedroom. He then left, taking the baseball bat and the backpack.

Extremely frightened, M.P. sat there for a short time thinking that the man was stealing property from the house. After a few minutes, she yelled out, but got no response. She then got her mobile telephone and sent a text message to her mother, asking her to call the police. M.P. walked from her bedroom and removed documents from the plastic sleeve attached to the lanyard around her neck. M.P. read a portion of one of the documents, saw the word "explosive", and immediately assumed that the man had placed a bomb around her neck. M.P. continued to yell out for the man, but got no response. After not being able to locate the man, she telephoned her father and told him to call the police, and she then returned to her room. M.P. resumed reading the note the man had left and noticed that it instructed her not to call the police. She then called her father back and told him not to contact the police. The police, however, had already been notified and arrived a short time later, finding the apparent improvised explosive device around M.P.'s neck. Initially, M.P. was crying and hysterical, but after a time, she became more reasonable and settled and gave the police the note.

Over the next nine to ten hours, M.P. remained near her room, so that the police bomb technicians could X-ray and evaluate the box around her neck. After multiple X-rays, and other presumptive tests, police bomb technicians declared the device to be free of explosives. The device was then removed from M.P.'s neck, and she was re-united with her family before being taken to a hospital for medical treatment.

M.P. described the man as being aged in his 60s, approximately 165-170 centimeters tall, of medium build with a slightly protruding stomach and weathered skin. The man had grey chest

3

hair and grey eyebrows, and his eyes were saggy and wrinkly. He wore a balaclava with multi-colored horizontal stripes. The stripes were blue, yellow, and white and were approximately one to two inches thick. The balaclava contained holes for his eyes and mouth. M.P. also described that the man as wearing a light blue-colored, button-up, collared business shirt with the sleeves rolled up to his elbows. He had the top three buttons open and his chest hair exposed. He also wore beige-colored trousers similar to "chinos."

The note placed around M.P.'s neck contained the following wording:
"Powerful new technology plastic explosives are located inside the small black combination case delivered to you. The case is booby trapped. It can ONLY be opened safely, if you follow the instructions and comply with its terms and conditions".

The note went on to instruct M.P. not to contact any authorities and stated, "You will be provided with detailed Remittance Instructions to transfer a Defined Sum once you acknowledge and confirm receipt of this message." The note instructed that receipt of the instructions should be confirmed by contacting the Gmail address of dirkstraun1840@gmail.com.

On August 3, 2011, members of the Police Robbery and Serious Crime Squad, State Crime Command took control of the investigation. The police conducted an investigation regarding the Gmail account and determined the account had been established on May 30, 2011, from an Internet Protocol ("IP") address linked to the Chicago Airport. Travel documents obtained by the police from immigration authorities indicate that Paul Douglas Peters was at the Chicago Airport on May 30, 2011.

The account had only been accessed on three occasions. All three occasions occurred on the afternoon of August 3, 2011, almost two hours after the hoax explosive device was placed around M.P.'s neck. The first access took place at 4:09 p.m. on August 3, 2011, from an IP

4

address registered to Kincumber Library ("the library") at 3 Bungoona Road, Kincumber, NSW.

The next two accesses were at 5:25 p.m. and again at 5:51p.m. on August 3, 2011, from an IP

address registered to the Avoca Video Store at shop 8, 179 Avoca Drive, Avoca Beach, NSW.

No further activations have been made since this time.

The police went to both locations referred to above, and the computers were examined by

specialist computer technical officers.  The police identified that the library had three computer

terminals that gave the public access to the internet for free, and that the Avoca Video Store had

three computer terminals that gave access to the internet for a fee of two dollars for fifteen

minutes of use.  Both locations had open access to the internet and relied on an honesty system to

pay for a person's internet usage.  That meant that there was no password or access code in either

location and anyone could sit down and access the internet by opening a web browser.  The

specialist technical police confirmed that the computer at the Avoca Video Store was used to

access the Gmail account dirkstraun1840@gmail.com.  The police were unable to confirm this at

the library because the computers at that location deleted their internet history automatically every

24 hours.

The police obtained and reviewed the Closed Circuit Television ("CCTV") footage at the

library.  The footage showed that at 4:05 p.m. on August 3, 2011, a four wheel drive ("4WD")

Range Rover entered and parked in the car park.  A witness observed the male driver exit the

driver's door and walk into the library.  The man walked directly to the area where the internet

computers are situated and remained there for approximately two minutes.  The man then walked

directly from the library to the 4WD and exited from the car park.  The man did not talk to or

approach anyone while in the library.  Despite the fact that the CCTV footage within the library

does not cover the area where the internet computers are located, the police believe that the

person who activated the Gmail account dirkstraun1840@gmail.com at 4:09 p.m. at the library was Paul Douglas Peters.

The CCTV footage does show that the man who entered the library was between approximately 50 and 60 years old, with short grey hair. The man is wearing a blue, button-up business shirt with the sleeves rolled up to his elbows and a red-colored tie. He is also wearing long beige pants, brown shoes, a black belt, and a silver wrist watch. The man captured on the CCTV footage is of a similar appearance and is wearing clothing entirely consistent with the description of the offender provided by M.P. following the incident two hours earlier in Mosman.

The police conducted enquiries with a Range Rover dealer in Parramatta and showed them an image of the silver 4WD vehicle as it entered the car park. Range Rover staff identified the 4WD from the CCTV footage at the library as a Range Rover between the model years 1996 and 2001, a period in which the body shape of the Range Rover remained largely unchanged.

The police attended the Avoca Video Store where the second and third accesses to the Gmail account occurred. The police spoke to an employee who was working on the night of August 3, 2011. He described serving an Australian man with tanned skin, aged in his mid forties and about 175 centimeters tall with bags under his eyes. The employee stated that the man was "well dressed", wearing a purple and white long-sleeved, button-up, collared shirt and dress pants.

The employee also stated that the man entered the store just before sunset and approached the counter. The man asked if he could use one of the internet computers as he was "…waiting for an email…". The man said he would only be a few minutes and if the email had not come through, he would return in half an hour. The man paid a two-dollar fee to the employee and

6

accessed one of the computers within the shop's internet café area. The employee said the man used the computer for no more than five minutes and then left.

The employee stated that about half an hour later, the same man returned to the video store and said, "Hi, I'm back again." He then accessed the computer for about two minutes. The employee stated that the man spent less time on the computer than he had on the first occasion. He then stood up and said "thanks", and then walked out.

There are no surveillance cameras within the Avoca Video Store, however the police obtained and reviewed CCTV footage from "The Liquor Shop", which is an alcohol store located next door to the Avoca Video Store. One camera captures people entering and leaving the alcohol store and the Avoca Video Store from a distance. The police viewed the footage and identified the same man, who was also seen in the earlier footage from the library, enter the Avoca Video Store on two occasions to use the internet computer. This time, the man was wearing what appeared to be the same beige long pants, but was wearing a light purple, long-sleeve business shirt. The sleeves of the shirt were again folded to his elbows in the same manner as the shirt the man wore in the library footage. This is also consistent with the description provided by the Avoca Video Store employee.

The CCTV footage from the Avoca Video Store shows that at 5:23 p.m. on August 3, 2011, the same man approaches the entrance to the store. The man does not enter, but turns and walks out of view. At 5:24 p.m., the same man returns and enters the Avoca Video Store. At 5:26 p.m., the man walks from the store and out of view. This time is consistent with the time of the second activation of the Gmail account, at 5:25 p.m.

At 5:47 p.m., the CCTV footage shows the same man returning. This time, however, the man enters The Liquor Shop and walks through the store. The image of the man is shown on

7

numerous cameras and angles throughout the store. While in the store, the man talks to a staff member.

The police spoke to the staff member, who remembered talking to the man. The staff member stated that the man asked about a bottle of "Phillip Shore Sauvignon Blanc" wine. The man told the staff member that he had purchased this wine before from this same store. The staff member searched in the fridge for the wine, however it was not available. The staff member stated that he informed the man, who then left. The staff member said he formed the impression that the man was just "…wasting time…" inside the store.

At 5:49 p.m., the CCTV footage shows the man walking out of the alcohol store and walking directly into the Avoca Video Store. At 5:51 p.m., the same man is seen leaving the video store and walking out of view. These movements are consistent with the third activation of the Gmail account dirkstraun1840@gmail.com at 5:51 p.m.

The police have conducted a forensic analysis of the USB memory stick that was attached to the lanyard and demand note placed around M.P.'s neck on August 3, 2011. The memory stick is a 4 gigabyte Imation memory stick with an internal serial number of F63E-96AF. Further analysis of the memory stick indicated that there was one undeleted file in PDF format. This file contained an exact text replica of the demand letter that was left with M.P. on August 3, 2011, during the offense.

The memory stick also contained three deleted files, which consisted of a manual for the Imation USB drive and two documents titled Trustee Instructions. Each of these documents contained letters of demand that were substantially similar to the demand letter left with M.P. Both had references to explosive devices and demands for money, and were signed off with an email address of dirkstraun1840@gmail.com. One of these files was in PDF format and the other

8

in Microsoft Word format. Analysis of the Word format document indicates that it was written by a computer with the identification of "Paul P".

On August 8, 2011, the police contacted the Roads and Traffic Authority (RTA), and as a result, the RTA supplied the police with all Range Rovers on record with a build date between 1996 and 2001. The police refined the search by limiting the scope to Range Rovers on the Central Coast of NSW, where the library and Avoca Video Store are located.

From these inquiries, the police located Paul Douglas Peters (born February XX, XXXX) with a recorded address of 20 Copacabana Drive, Copacabana, NSW and with NSW driver's license number XXXXXX. The police inspected the driver's license photograph attached to the license number and formed the opinion that Paul Douglas Peters is the same man who entered the library at approximately 4:05 p.m. on August 3, 2011, and the same man who entered the Avoca Video Store and The Liquor Shop later that afternoon. The address of 20 Copacabana Drive, Copacabana, NSW is in very close proximity to both Kincumber and Avoca. Copacabana Drive, Copacabana,

Police enquiries with the Department of Immigration and Multicultural and Indigenous Affairs revealed that Paul Douglas Peters flew out of Australia on United Airlines flight UA840, which left Sydney Kingsford Smith Airport at 1:50 p.m. on August 8, 2011, bound for the city of Chicago in the United States of America. Travel records indicate that the ticket Paul Douglas Peters traveled on was a one-way ticket only, with an adjoining flight on August 9, 2011, from Chicago to Kentucky. Further inquires revealed that Paul Douglas Peters boarded a plane bound for Louisville, Kentucky the following day (Tuesday, August 9, 2011).

CCTV footage from Customs at Sydney Airport shows Paul Douglas Peters moving through passport control and security screening on August 8, 2011. During the security

screening, Paul Douglas Peters is wearing beige-colored trousers similar to "chinos" as well as a purple or pink business shirt with long sleeves that were rolled up neatly to the elbow. This manner of dress and description is consistent with the CCTV footage at the alcohol store at Avoca, as well as at the library.

The police have obtained information that Paul Douglas Peters was formerly employed by a company with which the victim's family has links.

The police have obtained information from an office supplies store called "Officeworks" in West Gosford on the NSW Central Coast that on July 4, 2011, Paul Douglas Peters purchased an amount of stationery totaling A$18.10. This purchase was made by Paul Douglas Peters on his Commonwealth Bank account using a Mastercard and included the purchase of a USB storage device and a purple lanyard. This item is identical to that placed around M.P.'s neck. Paul Douglas Peters has purchased a number of items from this store. On a previous occasion, the transaction was captured on CCTV, and Paul Douglas Peters used the same Commonwealth Bank Mastercard.

On July 16, 2011, CCTV footage at the Erina Fair Shopping Centre shows Paul Douglas Peters entering the Rebel Sports Store. At this location, he purchased a black baseball bat using his Commonwealth Bank Mastercard account. This is consistent with M.P.'s description of the offender's carrying a black baseball bat.

7.      The following is a summary of the Investigation in the Western District of Kentucky:

As part of their investigation, the Australian authorities reviewed financial documents which indicated that Paul Douglas Peters wired money in 2009 from Australia to an individual named Deborah Lee Peters, 3006 Heather Green Boulevard, La Grange, Kentucky.

10

On August 11, 2011, Louisville Federal Bureau of Investigation Special Agent (SA) Frank Charles learned that individuals by the name of Doug Peters and Debra Peters receive mail at 3006 Heather Green Blvd., La Grange, Kentucky.  This residence is physically located in Buckner, Kentucky, however, the post office is located in La Grange, Kentucky.

On August 11, 2011, SA Charles received a digital photograph of Debra Peters via Kentucky DMV records and confirmation that Debra Peters currently resides at 3006 Heather Green Blvd., La Grange, Kentucky.  In the conduct of his investigation, which included a review of current public records, SA Charles learned that an individual named Doug Peters also resides at 3006 Heather Green Blvd., La Grange, Kentucky.

On August 11, 2011, SA Charles drove by 3006 Heather Green Blvd., La Grange, Kentucky.  He noted that this residence is currently for sale.  While writing down the name and contact number for the property agent, SA Charles observed a male in the back yard of the residence.  The male was approximately 5' 9" tall, with a thin build and grey hair.  SA Charles believes the individual he observed matches the description of Paul Douglas Peters as described by the Australian authorities.

8.      the offenses with which Paul Douglas Peters are charged are provided for in Article 2 of the extradition treaty cited above;

9.      Paul Douglas Peters may be found within the jurisdiction of this court at 3006 Heather Green Boulevard, Buckner, Kentucky;

10.     the requesting state has represented that it will submit a formal request for extradition, supported by the documents specified in the treaty, within the time required under the treaty; and

11.     the person named above would be likely to flee if he learned of the existence of a warrant for his arrest.

11

WHEREFORE, the undersigned complainant requests that a warrant for the arrest of the

person named above be issued in accordance with Title 18, United States Code, Section 3184,

and the Extradition Treaty between the United States and Australia, and that this complaint and

the warrant be placed under the seal of the court, except as disclosure is needed for its execution,

until such time as the warrant is executed.

Respectfully submitted,
DAVID J. HALE
United States Attorney


Michael A. Bennett
Assistant United States Attorney


Sworn to before me and subscribed in my presence this 15 day of August, 2011, at Louisville, Ky.


DAVE WHALIN
United States Magistrate Judge

12